For those of you who are going to be here all morning, there may be times during the oral argument where I stand. And that's not due to disrespect for any of you, but I had back surgery, so sometimes it's hard for me to sit for a length of time. So if I stand, just keep on speaking as if I'm sitting. OK, the first case of the morning is Vaughn v. City of Carbondale, 5140122. The court is ready. You may proceed. May it please the court, Mr. Kittle. My name is Mike Morezio. I am here today to argue this case on behalf of Jeffrey Vaughn. Briefly, I would like to rinse through some of the facts that I believe are important for the court to be very aware of. First off, Jeff Vaughn was a full-time law enforcement officer for the City of Carbondale and was injured in June of 2005. In March of 2009, the Police Pension Board ruled that he was not injured in the line of duty. That case was appealed to the Jackson County Circuit Court, who reversed the board and found that he had been injured in the line of duty. And then in May of 2011, this court, in the first appeal that was heared on behalf of Jeff Vaughn, affirmed the Circuit Court and found that Mr. Vaughn had been injured in the line of duty. Shortly after that, I wrote a letter to the City of Carbondale demanding that they pay for his health insurance as a percentage of the Public Safety Employee Benefits Act. Shortly after that demand was made, the City began paying him his health insurance. There was never a question raised at any time as to whether or not Mr. Vaughn was eligible for that particular health insurance. In July of 2012, the Carbondale Police Pension Board required Jeff Vaughn to take another medical exam. At the end of that exam, they found that he was no longer disabled and that he could return to work. Shortly after that ruling was made by the Pension Board, the City of Carbondale stopped his health insurance pursuant to the Public Safety Employee Benefits Act. Vaughn appealed the Police Pension Board's decision, and the Jackson County Circuit Court upheld the board's decision. That appeal was taken to this court, which was the second time Mr. Vaughn was up here. And at the same time that he filed the appeal here on the board's decision, he filed a request in the Circuit Court of Jackson County for an injunction to stop the City from terminating his health insurance, partially on the fact that there was a second appeal on whether or not he was still injured, and partially because there was no statutory language in the Public Safety Employee Act to terminate his health insurance once it was awarded based on the facts of this case. In this case, for this appeal, the Circuit Court entered a preliminary injunction on September 12th. Then, while the second appeal was pending on whether or not he was actually still injured, the Circuit Court entered an injunction in February of 2014 denying the request for injunction, and the City then terminated Jeff Vaughn's health insurance. This appeal, which is the third appeal for Mr. Vaughn before this court, is now pending. Isn't the issue whether he suffered a catastrophic injury? No, Your Honor. I believe that that has already been determined by the Circuit Court, and I think that that's the question that is going to be pending in the appeal. Well, I can't say that because this court has already ruled in the second appeal and sent back reinstating all of Mr. Vaughn's disability pension. Pension? Correct. Would you agree that's different than health benefits? It certainly is. It's covered by a different section of the Act? It's not covered by the Pension Act. It is not in the Pension Act at all, in fact, which is one of the things the City has argued in their brief, is that they paid the health insurance not pursuant to the Public Safety Employees Act, but they paid it because he was on a disability pension. There's nothing in the pension code that says an employer has to pay a policeman or a fireman or any other public safety official health insurance if he's entered in the line of duty. So the payments clearly had to be made under the Public Safety Employees Act. The payments clearly had to be made? I think there's no question that the health insurance was paid because of the Public Safety Employees Act. I don't think there's any other way the City would have paid. They certainly wouldn't have done it gratuitously.  I'm sorry? Could it have been a mistake? I don't think it was a mistake because the City has to go through a process to approve that. Somebody up the line had to approve. What evidence was produced to show that it was a catastrophic injury? Well, the catastrophic injuries was determined both, well, by the Illinois Supreme Court in the case Noah where it defined the catastrophic injury as an injury in the line of duty which made it impossible for a police officer to return to duty. That's what was found by this court and by the circuit court in the very first appeal, that he had a catastrophic injury, was injured in the line of duty, or was injured in the line of duty, therefore, by definition, it was a catastrophic injury based on what the Illinois Supreme Court said. The 5th District first opinion, does it use the word catastrophic injury? Your Honor, I don't recall. I do not recall whether they did or not. I know they ruled that it was an injury in the line of duty, which would make it, by definition, a catastrophic injury. Why? Because he was unable to return to work.  My understanding of the definition in NOAC is that's a catastrophic injury. Another thing regarding the health insurance issue is in the initial trial court, really, as is identified in the preliminary injunction that the circuit court entered, one of the issues about whether or not Section 10B of the Public Employee Safety Act applies was addressed where the court said that some of the issues raised by the defendant as to whether Mr. Vaughn qualified for insurance under the Public Safety Employee Benefits Act were addressed in the circuit court's prior decision. The court pointed out that it is a police officer's duty to rapidly respond to a call. The court stated the plaintiff was responding to answer a dispatch. His capacity was to answer a police dispatch call, and he did not know what the nature of the call would be, but was prepared for any eventuality. He was engaged in an act of responding to a potential emergency of a citizen when he was injured. His injury resulted when Mr. Vaughn left the side of a person that he was assisting at the mall to enter his car to answer a call and struck his head on the door frame, which caused a compression fracture in his back. That's how he was injured. We don't know what the call was about. We don't know whether it was an emergency at this point. Aren't you defeating your own argument when you say that? When you say that it wasn't an emergency? No, because I think that the circuit court has made it pretty clear that, at least in the circuit court's opinion, and this was in the first appeal, mind you, and has never been addressed or never objected to by the City of Carbondale or the Board of Fire and Police Commissioners, that his duty was to respond. And if we start to second-guess whether or not this was an emergency or not, then we get into a situation where everything that we have to do when it regards a police officer in an emergency situation, whether he did right or wrong. I think in the brief that was filed, he gave an example of if a policeman was in a shootout, whether he used the proper cover or whether he used the proper barricades to protect himself. Do we get down to that level? Well, you would qualify that kind of shootout as a police officer's reasonable response to an emergency situation, wouldn't you? I missed that point. The example that you just provided where an officer is in a shootout, would you agree that that's a reasonable response to an emergency situation? I would certainly agree that it would be. Doesn't the statute have the four requirements that are needed, all of which involve some kind of emergency? The statute at Section 10b states that the injury or death must have occurred as a result of the officer's response to fresh pursuit, his response to what is reasonably believed to be an emergency, an unlawful act perpetrated by another, or during the investigation of a criminal act. Which one does your claim fall under? I think it could very possibly fall under two. It could very possibly fall under his response to what he reasonably believed to be an emergency or the investigation of a criminal act because the beginnings of either of those two things is a request from the dispatcher. The beginnings of either of those. That's where they start, unless it's an on-site, on-scene type of incident. If you are responding to a burglary call or a fight call or a battery call, that, as a general rule, starts with a phone call to the police department and the dispatcher assigning a patrol unit to answer that call. That's where that starts. That's also the investigation of a criminal act, and that's where that would begin. The statute doesn't say you have to be at the scene of this incident. It says you have to be investigating or doing something that you reasonably believe may be an emergency. If that's the case, then that initial response to the police radio would qualify as this. Now, the city also cites a case where there were two firemen. Gaffney, I believe, was the case where there were two firemen on a training mission. In a training situation, the training situation went bad, and during the training, one of the firemen was injured. The other, his partner, actually responded to his friend being injured, which became a real emergency, and the Supreme Court ruled, number one, that the first firefighter didn't qualify under the Public Safety Employees Act, but the second one did. The first one, because he was in a training situation, went bad, and the second one, because he was actually responding to the emergency itself. So when the city cites that as a basis for denying the coverage for Mr. Bond, it's actually completely different, because Mr. Bond wasn't in a training situation. Mr. Bond was on the street doing his job and responding to a call from dispatch. As to whether or not to find out what was going on. You know, we're also arguing something that when the court in the second appeal sent the case back, they reinstated Mr. Bond's pension benefits back to June 26th of 2012. I submit to the court, if the pension board had not terminated those pension benefits, the city of Carbondale would never have raised this issue, that they now raise, what, three years, two years after they awarded the benefit, when they had plenty of time to respond to it. They could have responded to it at the time they awarded it. I don't think they made a mistake. I think they realized at that time that they had to pay those benefits. They did pay those benefits. And now they see an opportunity, wow, maybe we can not have to pay these anymore. So they do that. In the second issue, which position did they use? I'm sorry, Your Honor? Did they use this Dr. Cantrell again? No, they used, I believe his name was Will Miller. He's a general practitioner from Memphis, Maryland. Somebody different. Somebody different. Now, the first time that they denied and the court sent it back, it was the same doctor. In the very first appeal, there were seven doctors examining Mr. Vaughn. One of the seven said that he was able to go back to work. And what the city did was they continually sent him to a doctor until they found one that would say what they wanted. The circuit court said that's not good. You can't do that. This court said that's not good. You can't do that. And they found that he was disabled in the line of duty. Now, in the second appeal, the city gave Mr. Vaughn no notice of what they were doing. They sent him to a doctor, which he did. And then they held a hearing and didn't tell him about it. And then they ruled that his pension benefits were terminated. He had no opportunity to seek his own doctor or put on any evidence about his current condition. And the court, in this case, in the second appeal, actually ruled that his deprocessed rights had been violated and reinstated his pension funds and sent it back to the board. Although it's not in the record, Mr. Vaughn is in the process of doing this all over again. Well, let's stay away from things not in the record. Again, the issue as to whether or not Mr. Vaughn was responding to an emergency, I believe, is addressed in the very first decision made by the circuit court in Jackson County and when it overturned the board. And again, it's cited in the preliminary injunction order that was issued by the circuit court in this case. We tried to get—well, it doesn't matter. Do you think that the circuit court substituted its own fact-finding for that report? Did they? Did they? Did it? No, I don't think they—I don't think it substituted its own fact-finding. I think it took the facts and said that what the board found was unreasonable based on all the evidence that had been presented at that time. Unreasonable? Do you think is that the standard for a circuit court? I think I—the—Your Honor, you have to excuse me. I'm—my thought processes just aren't working right now and I can't think of the term that is used—that needs to be used for overturning a decision. It's discretion. They abused their discretion. Clearly erroneous, ma'am. Clearly. And I think that it was. And I'm erroneous. I'm lost. I hope you're not lost. But unless the court has any other questions, I really don't have any other argument. Thank you. Thank you. Okay. Mr. Kimball. Please, the court. Mr. Marizio. I'm Mike Kimball. I'm the Cardinville City Attorney. I am here because Mr. Vaughn filed a suit against the city asking that the city be required to provide he and his wife lifetime health insurance. Now, a couple of things have been going on here. They keep talking about all these cases. This is the only one that the city of Cardinville is involved in. I have no control nor any input in the cases for the Cardinville Police Pension Board because it is a standalone pension board with its own board, makes its own decisions and litigates and hires its own attorney, who is not me. So, although I'm aware of the first couple of cases, I wasn't involved, nor was the city. Now, Mr. Marizio's firm, he's representing his client through everything, so I know it sometimes possibly gets a little confusing. But what we have here is Mr. Vaughn is asking, for the first time, asked the city to provide he and his spouse under Section 10 of the Public Safety Employees Benefit Act, one of those long things that doesn't seem to fit into any acronym. That's why I refer to it usually as just Section 10 so I don't have to say it over. That case, that statute was passed by the Illinois legislature in 1997, and it requires that if a first responder is injured in one of four ways, response to fresh pursuit, which is clearly not the case here, unlawful act perpetuated by somebody else, in other words, if he's shot at, I would presume if there was a shooting, that would fall into that, and that clearly, if an officer is injured in that case, then he should recover. And basically, the third one is response to or investigating a criminal act. We know that we require our first responders to go into a whole lot of places that neither any of you, nor I, nor probably anybody in this room want to go into, but law enforcement has to go there to investigate. And if they're injured going into those places, that is something that the state and the community should provide compensation for. Again, none of those three in this case can even be argued to be this case, in my view, with the stipulated facts and with Mr. Vaughn's application. But what can, what he is arguing is that he reasonably believed that there could have been maybe an emergency. Now, first of all, that requires that he believed it. And there is in this file, Common Law Record 123, Mr. Vaughn's own affidavit. As the facts were stated, he was talking to somebody, giving them directions to Carbondale Hall, and not one of those things that's emergency or anything like that. He hears a call on the car radio. He is equipped with his own personal radio that also can respond. He says in his affidavit he had it on, had it turned off, didn't think anything was going on, didn't think anything was necessary to turn it off, left it off, walked over to the car, leaned down to get the mic, and hit his head. That's what we're talking about here. Those are the facts. He didn't reasonably believe that was an emergency. He put in his own affidavit. He was obviously involved. He took the call. Had the call been an emergency, proceed to a bank robbery or somebody's being shot or somebody is being knifed right now and you have to be there, I think Mr. Vaughn would have remembered that, and I assume he would have put that in his affidavit. But he didn't. He just said, well, the car was close enough, so I went over there and took the call that way. I didn't turn on my own personal radio because I didn't need to. Were the logs of the dispatcher brought into evidence? Well, no. We have stipulated facts, and basically they could have been provided to Mr. Vaughn, but there really is stipulated facts and affidavits in this case. So what were the stipulated facts as to the reason for the call? There were no stipulated facts? No. I mean, was he responding to a dispatcher's call? Could have been Mr. Vaughn's spouse called up and said he needed to pick up eggs and milk after shift. Or it could have been a bank robbery, but nobody knows. Well, I'm not sure that nobody knows, Your Honor, but in this record, nobody knows. But had it been a bank robbery, and that's what I'm asserting, Mr. Vaughn obviously would know that. He puts in his own affidavit in this concerning that situation, and he doesn't say it's a bank robbery. He never says, I am responding to any emergency whatsoever. Now, he has to reasonably believe it, but it also has to be an emergency. And it's Mr. Vaughn's duty to present to the court and to the city that there is a reasonable emergency. So you don't know if it's an emergency until after you answer the call? Well, that's true, Your Honor. So is there any kind of ruling that you have, or any kind of orders that they have, that you should pick up the mic as soon as you get a call, answer it, or just finish your coffee and then answer it? How would you know? Well, Your Honor, you're supposed to reasonably answer the call. Reasonably. Is that in some kind of directory, or is there some kind of rules that they follow? Because our police department has a lot of policies, and police officers like it that way. I'm sure that there probably is, but it's not asserted in this case. But there is a rule someplace. It's been my experience as city attorney that I think there's a rule relative to police officers for everything. Well, my question is, how much time should he spend in answering the call? Has he got five minutes, a minute, half a minute, a few seconds? When are you derelict in your duty of not answering the call? Your Honor, if you thought, we've actually had cases where officers have fallen asleep and been 30 to 40 minutes. Is it a problem if it's not an emergency? I'm sorry? Is it a problem if it's not an emergency? Your Honor, that comes to actually employing discipline, and it really doesn't matter if it's an emergency. They are supposed to respond. The emergency part of that is established by the Illinois legislature in this act. And the Supreme Court in Gaffney basically has talked about this. Now, Mr. Maurizio kind of got Gaffney screwed up because what Gaffney involved was actually two firemen, two different situations. And what the Supreme Court was doing was addressing what is an emergency. And the Supreme Court specifically held that it is something that is unforeseen. A dispatcher responding to a dispatcher call is clearly not unforeseen for a law officer. It happens all the time. And it involves a person or property in immediate peril. Now, if that were the case, it is incumbent upon the plaintiff in this case to present that that was the case. It wasn't. It didn't. And therefore, although he responded, and I'm sorry that he hit his head on the top of the car, but unfortunately, that is not responding to an emergency, nor is it responding to what he reasonably believed was an emergency. Now, that's what's important here. Certainly, Mr. Vaughan has a line of duty injury. That's what the first case was all about, was his injury as a result of a line of duty occurrence. The board first held, no, it wasn't. The trial court reversed that. That was appealed, and this court said that the appellate court, or I'm sorry, that the trial court was correct. And nowhere in that opinion, Your Honor, does it say anything about catastrophic. It just says it was line of duty. And I know probably all of you have a lot of line of duty cases. It says he was injured on the job. And he gets pension benefits. The city provided as part of those pension benefits health insurance. When he filed suit here, we actually notified him once he was determined not to have been injured or not currently injured so that he could, in fact, serve as a police officer. And that came up on appeal. Now, what this court held in that second appeal was solely a matter of due process. In fact, if you look on page 10 of the Rule 23 order, which I attached as part of my brief as an appendix, because it is the law of this case, it basically says we don't determine anything about whether he's injured, not injured, what his health is. We only determine that the board did not give him adequate notice of the hearing. And then when he asked that the hearing be set aside and given a hearing, they refused that. Due process. Mr. Vaughn may be healthier than I am right now. I don't know. But Mr. Vaughn is not entitled to, nor is his spouse entitled to, lifetime health insurance under the Public Safety Employees Benefit Act because this occurrence, in fact, was not something responding to what he thought was an emergency or what was an emergency. What about the fact that the city of Carbondale has been paid? Your Honor, we did pay. We obviously paid after the trial court said we had to when we asserted we didn't have to. You paid before the trial court said you had to. Well, we paid during the pension. We basically started when there was the first appeal saying he was entitled to a pension. The pension had nothing to do with the health benefits as you've just described. That's when we started, Your Honor. We, and there is an affidavit in here that we never paid it under until the trial court told us to, paid it under the Public Safety Employees Benefit Act. But irrespective of that, Your Honor. What would you have paid it under if not that act? A mistake. Then does the issue of estoppel arise as to you? Your Honor, that's where I was about to go. This court has addressed that in the national case. It's cited in my brief. I think it's massive. It specifically says that estoppel is very difficult, almost impossible to get against municipalities and the government. First of all, it says that the act being estoppel requires that there have been a legislative act. In other words, the city council or the mayor, somebody, that never happened here. What do you mean a legislative act? Well, that's what the massive tort says. It has to be something that the council or the mayor, an elected official, does. It is not just an action of an employee. Certainly there are cases where a building inspector gives out a building permit and the city is estopped from denying it, so the agent binds the city's actions. That doesn't require an act or something, does it? It requires a higher standard, and it requires that the party rely on it. Those are cases normally where somebody goes in and says, is this lot zoned for that? I then go in and spend a million and a half dollars building a building, and then the city comes in and says, oops, sorry, we screwed up. You can't use that building. You've got to tear it down. What about this officer's reliance on that insurance? He didn't. He doesn't rely on health insurance? Well, he is obtaining health insurance, but he did not change his position. He hasn't changed his health. He hasn't done anything in reliance on the city's payment. This is not an estoppel case, in fact. There are none of the requirements met for estoppel. First of all, as I said, the record is unclear whether the city paid it under this theory, but if we did, we can't be estopped to be required to do it forever. That would mean that if one employee paid somebody something one time wrongfully, then the city is required to pay it, in this case, for the entire balance of that person and his or her spouse's lives. And, Your Honors, that's not what estoppel calls for. That's not what the legislature talked about. What the legislature wanted to do in this act is commendable, I think. They wanted to say our first responders, in certain circumstances, have to put themselves at substantial risk, over and above what anybody else has to. And if they're injured, they ought to receive some benefit from that. But if an officer is in the break room and he basically turns on the coffee pot and it shorts out and he's electrocuting and he's basically a paraplegic, he has a worker's comp claim, and I'm sorry he's injured, but the city should not have to pay he and his spouse's health insurance for the rest of their lives because of that. It was an accident. It occurred while he was on duty. If you say every time you respond to any directive at all or hear the directive, it is now raised to the level of an emergency, then basically you have read that whole section out. You have said any on-duty officer or fireman under any circumstance is allowed to get lifetime health insurance. Your Honors, that's not what this is about. And that's what the Illinois Supreme Court McGaffney case clearly said. They said we have two firemen here. One is recovered because something came up. There was clear peril. It was unforeseen. The other one was a normal operation, nothing unusual. He was injured or sorry, but he doesn't recover. What Mr. Vaughn did was during a normal shift, he was responding to citizens' questions. He was out of his car. He hears his name. He walks over to the car, reaches in to get the mic, hits his head. I'm sorry he was injured, and I concede that's line of duty, but that was not an emergency that allows he and his spouse to get to require the taxpayers of Carbondale to pay for his and his wife's health insurance for the rest of their lives. Any further questions? Thank you. Thank you. Mr. Morrissey? Very briefly, Your Honor. Two things. First off, the gentleman alleged that the city began paying Mr. Vaughn his health insurance pursuant to this act only after the court ordered it to. That's not true. They started paying it shortly after January 26th of 2012 when the letter was written to the city on behalf of Mr. Vaughn making a demand that they pay that insurance. They began almost immediately. Secondly, he says Mr. Vaughn is not in a different position today. Well, I beg to argue that. The city gave him his health insurance. He canceled his. He has no health insurance. Now, he does again because he went out and got it again, but he relied on the city to pay for his health insurance, and he canceled his. So there was some reliance on it. The other thing when it comes to Estoppel, Mr. Kendall writes in his brief, there's three points. One of them is there has to be an affirmative act. Well, the city gave him his health insurance. There was no court order to give it to him. They gave it to him based on the letter that was written on Mr. Vaughn's behalf. The second thing is they issued the health insurance. And the third thing, that he relied again on that health insurance to protect his wife and his family and himself, and it was canceled by the city. So I believe that he – I don't believe it was a mistake. I believe the city knew exactly what they were doing, and now they're trying to get out of it. And I would ask the court to issue an injunction or send this back to the trial court to issue an injunction and make the city pay this man's health insurance for Senate to the Senate. Thank you. Thank you. Okay, the matter will be taken under advisement and an order will issue in due course.